PARSONS BEHLE & LATIMER
Rew R. Goodenow, Esq., NV Bar No. 3722
Robert W. DeLong, Esq., NV Bar No. 10022
50 W. Liberty Street, Suite 750
Reno, Nevada 89501
Telephone: (775) 323-1601
Email: RGoodenow@parsonsbehle.com
RDeLong@parsonsbehle.com

Attorneys for Petitioner

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In the Matter of the Application of<br><br>COMMERCIAL BANK OF DUBAI<br><br>　　　　　　　　　　Petitioner,<br><br>for an Order under 28 U.S.C. § 1782(a) Authorizing Service of a Subpoena to Require Testimony and the Production of Documents by<br><br>NEVADA TITLE COMPANY,<br>WYNN RESORTS, LTD.,<br>WYNN LAS VEGAS LLC,<br>CAESAR'S ENTERTAINMENT CORP.,<br>CAESAR'S ENTERTAINMENT OPERATING COMPANY INC., and<br>LAS VEGAS SANDS CORP.<br><br>　　　　　　　　　　Respondents,<br><br>for Use in an Action in Lawsuit No. 4733/2104, Sharjah Court of First Instance, Plenary Commercial, Sharjah, UAE; | Case No. _____<br><br>***EX PARTE* PETITION FOR AN ORDER UNDER 28 U.S.C. § 1782(a)** |

　　　　Commercial Bank of Dubai ("CBD") petitions the Court for an *ex parte* order under 28 U.S.C. § 1782(a) authorizing service of subpoenas, in substantially the form of Exhibits 1 through

12 hereto, directing Respondents (i) Nevada Title Company, (ii) Wynn Resorts Ltd, (iii) Wynn Las Vegas LLC, (iv) Caesar's Entertainment Corp, (v) Caesar's Entertainment Corp. Operating Co., and (vi) Las Vegas Sands, all and corporations that reside or may be found in this Court's district, to (i) provide documents responsive to the document subpoenas set forth in the attached Exhibits 1 to 6 and, if needed by Petitioner, (ii) testimony under oath related to matters specified following production of the requested documents, as set forth in deposition subpoenas in the attached Exhibits 7 to 12.  (CBD will pay witness fees in accordance with LR 54-5 in the event that it serves deposition subpoenas.)  In support thereof, CBD respectfully represents and alleges:

## Introduction

CBD petitions the Court as an "interested person" under 28 U.S.C. § 1782(a) for an order authorizing the service of discovery subpoenas on Respondents for production of documents (and, potentially, testimony) for use in one or more ongoing and/or reasonably contemplated foreign proceedings.

## Nature of this Proceeding

1. On October 10, 2014, CBD filed a Statement of Claim initiating a lawsuit, *Commercial Bank of Dubai v. Al-Sari. et al.*, Lawsuit No. 4733/2014, in the Sharjah Federal Court of the First Instance, Plenary Commercial Department, United Arab Emirates ("UAE") (the "Sharjah Action").  On January 18, 2016, CBD filed a Statement of Involving New Opponent in the Sharjah Action, naming additional defendants in the Sharjah Action (known as "involved opponents").

2. The defendants and involved opponents in the Sharjah Action are (i) Mohamed Abduallah Juma Al-Sari, (ii) Majid Abdullah Juma Al-Sari, (iii) Abdullah Juma Majid Al-Sari (collectively, the "Al-Sari Individual Defendants"), and (i) Horizon Energy Co. LLC, (ii) Sari Investments Company LLC, (iii) Alsoor Investments LLC, (iv) Alsoor General Trading LLC, (v) Grand Valley General Trading LLC, and (vi) Investment Private Group Ltd. (collectively, the "Al-Sari Company Defendants").

3. As alleged in more detail below, the Sharjah Action involves claims that are in many respects similar to claims for fraudulent conveyance under Nevada law.

4. More specifically, in the Sharjah Action, CBD alleges that:

    a. CBD extended a loan in the amount of AED 472,676,345.71 (approximately $118 million) to FAL Oil Co. LLC, a UAE company.

    b. The CBD loan to FAL Oil Co. LLC was guaranteed by Investment Private Group Ltd ("IPGL") and by the Al-Sari Individual Defendants, who are the owners of FAL Oil Co. LLC and IPGL.

    c. FAL Oil Co. LLC defaulted on its debt to CBD, and the Al-Sari Individual Defendants and IPGL defaulted on the gurantee obligations in their capacity as guarantors of the loan from CBD to FAL Oil Co. LLC.

    d. The Al-Sari Individual Defendants engaged in a campaign of ongoing fruadulent conveyances to avoid honoring FAL Oil Co. LLC's debt to CBD and their guarantee obigations to CBD. Specific allegations (quoted from certified English langauge translations of CBD's filings in the Sharjah Action) include the following:

- "[F]or the purpose of inflicting damage on the Plaintiff Bank [CBD], the [Al-Sari Defendants] . . . have disposed of a number of their real estate properties, [and] . . . . are still doing so, where they alienated the title-deeds of those properties to other parties to evade the settlement of the debt due to them, and for the purpose of inflicting damage to the Plaintiff Bank's rights as well as for depriving the Plaintiff Bank from the guarantees of the debt due to it."
- "[The Al-Sari Individual] Defendants have resorted to a systematic method from the date of their default under the loan for disposing of their assets by squandering the assets of FAL Oil Co. L.L.C. through alienating their assets and personal funds to individuals and companies to evade the settlement of the liabilities arranged on them while concealing themselves behind those new companies established by them."
- "Defendants have established new companies and have transferred their shares in existing companies to the names of their wives, daughters or relatives. And the Defendants are managing those companies through their relatives of first degree as camouflage for their business. And that the Defendants have transferred a great part of the properties, assets

and clients of FAL Oil Co. L.L.C. to other companies, either belonging to them or they have shares in those companies."

- For example, the Al-Sari Individual Defendants transferred property, assets and clients of FAL Oil Co. LLC to another company—Horizon Energy Company (UAE)—which is owned by Al-Soor General Investments Company LLC and IPGL, both of which, in turn, are owned by the Al-Sari Individual Defendants.

- Similarly, the Al-Sari Defendants have placed assets with companies, typically incorporated in 2013 or later, nominally owned individuals such as their wives and minor children, but in fact benefially owned and controlled by the Al-Sari Individual Defendants, including: (i) Sari Investment Company (established in 2014, and nominally held by the wife and two minor children of Al-Sari Individual Defendants, but in fact controlled by Mohamad Abdullah Juma Al-Sari); (ii) Alsoor Investments LLC (established in 2014, and nominally held by the wife and two minor children of Al-Sari Individual Defendants, but in fact controlled by Mohamad Abdullah Juma Al-Sari); and Alsoor General Trading Company, LLC.

  e. Accordingly, in the Sharjah Action, CBD seeks to unwind the foregoing and other fraudulent conveyances. CBD explains: "Whereas the [Al-Sari Individual Defendants] have disposed of their assets to evade settlement of the debt due from them for the purpose of inflicting damage to the rights of the Plaintiff Bank, then the latter has the right of calling for the invalidity of the above-menionted actions."

  f. CBD bases its action on UAE law, pursuant to Article 397 of UAE Civil Procedures Law, which provides in relevant: "if the creditors claimed the debt due to them from the debtor who guaranteed his debt by his assets in favor of those creditors, then the debtor may not donate his assets or dispose of them, whether against return or not. Otherwise, the creditors may request the invalidity of any action taken by the debtor, and may request the sale of his assets and to distribute the collected sale amount among them pursuant to the law provisions."

5. Amongst the issues that CBD wishes to prove through the introduction of evidence in the Sharjah Action are the following, all of which are essential elements of case in the Sharjah Action:

    a. That the Al-Sari Individual Defendants have acted intentionally, deliberately and/or wrongfully to frustrate CBD's efforts to collect the debt that FAL Oil Co. LLC owes to CBD and on the guarantees that the Al-Sari Individual Defendants and IGPL have made to CBD;

    b. That the Al-Sari Individual Defendants have divested assets of FAL Oil Co. LLC in excess of FAL Oil Co. LLC's debt to CBD;

    c. That the Al-Sari Individual Defendants have divested their own assets in excess of their guarantee obligations to CBD; and

    d. That although the Al-Sari Individual Defendants have nominally "divested" certain assets by transferring those assets to companies nominally "owned" and/or "controlled" by their relatives (including minor children and an elderly wife), in fact Al-Sari Defendants continue to own and control the purportedly "divested" assets.

6. In addition, to the extent that CBD is able to identify other instances of fraudulent conveyances by the Al-Sari Individual Defendants and/or FAL Oil Co. LLC, CBD reasonably anticpates that it will add claims to the Sharjah Action to unwind such transactions.

7. The Al-Sari Individual Defendants and FAL Oil Co. LLC have been making, and continue to make, affirmative efforts in the United States to prevent CBD from collecting on their debt and guarantees to CBD. Among other things, the Al-Sari Individual Defendants have (a) purchased assets through shell companies, rather than in their own names, (b) recently liquidated their US real estate holdings, and (c) purchased, on behalf of themselves and/or FAL Oil Co. LLC, signifcant quantities of investment grade diamonds (and other jewelry). On information and belief, the Al-Sari Individual Defendants have made, and/or intend to make, fraudulent conveyances of the foregoing assets to recipients in the UAE and in other foreign countries.

8. On information and belief, companies and/or shell companies that may be the recipients of fraudulent conveyances of assets of the Al-Sari Individual Defendants and/or FAL Oil Co. LLC include but are not limited to the following entities (collectively, the "Al-Sari Transferees"):

  a. Signature Diamond LLC (UAE);
  b. Gulf General Investment Company PLC ("GGICO") (UAE);
  c. GGI Retail (UAE);
  d. GGICO Luxury (UAE);
  e. GGICO Properties (UAE);
  f. GGI Entertainment (UAE);
  g. TIME Hotels and Resorts (UAE);
  h. En Vogue (UAE);
  i. Horizon Energy (UAE);
  j. Delma Exchange (UAE);
  k. Sari Holdings LLC;
  l. Lodge Hill Ltd. (BVI);
  m. Westdene Investments Ltd. (BVI); and
  n. Hortin Holdings Ltd. (BVI).

9. Respondents Wynn Resorts Ltd., Wynn Las Vegas LLC, their subsidiaries and/or affiliates operate casinos at which certain of the Al-Sari Individual Defendants have gambled, and to which certain of the Al-Sari Individual Defendants have transferred money by wire from one or more foreign countries.

10. Respondents Caesars Entertainment Corp., Caesars Entertainment Operating Company, Inc., their subsidiaries and/or affiliates operate casinos at which certain of the Al-Sari Individual Defendants have gambled, and to which certain of the Al-Sari Individual Defendants have transferred money by wire from one or more foreign countries.

11. Respondent Las Vegas Sands, its subsidiaries and/or affiliates operate casinos at which certain of the Al-Sari Individual Defendants have gambled, and to which certain of the Al-Sari Individual Defendants have transferred money by wire from one or more foreign countries.

12. Respondent Nevada Title Company settled transactions in which certain of the Al Sari Individual and/or Al Sari Transferees recently liquidated their US real estate holdings in Nevada, *i.e.*, two condominiums at the Mandarin Oriental, Las Vegas, sold for $3 million in March 2017.

13. CBD seeks, under 28 U.S.C. § 1782(a), an order from this Court permitting CBD to seek in discovery from entities in the District of Nevada to obtain evidence that CBD needs for the Sharjah Action.

14. 28 U.S.C. § 1782(a) provides, *inter alia*:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

**Parties to this Proceeding**

15. CBD is a publically traded UAE banking and financial services corporation headquartered in Dubai. It is the 35th largest bank in the Persian Gulf region.

16. Respondent Nevada Title Company is located at 2500 N. Buffalo Drive, Las Vegas, Nevada, 89128.

17. Respondents Wynn Resorts Ltd. and Wynn Las Vegas LLC are located at 3131 Las Vegas Blvd., South, Las Vegas, NV, 89109.

18. Respondents Caesars Entertainment Corp. and Caesars Entertainment Operating Company, Inc. are located at One Caesars Palace Drive, Las Vegas, NV, 89109.

19. Respondents Las Vegas Sands Corp. is located at 3355 Las Vegas Blvd. South, Las Vegas, NV 89109.

### Jurisdiction and Venue

20. This Court has jurisdiction over the subject matter of petitioner's claim under 28 U.S.C. §§ 1331 and 1782(a) because this petition raises a federal question under 28 U.S.C. § 1782(a).

21. Venue is proper in this District under 28 U.S.C. § 1782(a) because Respondents reside or may be found within the District.

### Documents Requested From Respondents

22. To prove that the transactions at issue in the Sharjah Action are in fact fraudulent conveyances (or akin thereto) under applicable UAE law, and to identify any additional fraudulent transfers by the Al-Sari Individual Defendants and/or FAL Oil Co. LLC, CBD seeks the following discovery from Respondent Nevada Title Company:

- All documents related to any transaction involving the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees;

- Documents (e.g., SWIFT messages, bank account statements, cancelled checks) sufficient to show the source (e.g., name of sender, bank of sender, account number of sender) of any transfer or payment made by the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees to Respondent, including but not limited to transfers to escrow account(s);

- Documents (e.g., SWIFT messages, bank account statements, cancelled checks) sufficient to show the destination (e.g., name of recipient, bank of recipient, account number of recipient) of any transfer or payment made by Respondent to the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees; and

- Documents sufficient to show any debt, if any, that the Respondent owes to the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees or funds that Respondent holds on behalf of the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees.

23. To prove that the transactions at issue in the Sharjah Action are in fact fraudulent conveyances (or akin thereto) under applicable UAE law, and to identify any additional fraudulent transfers by the Al-Sari Individual Defendants and/or FAL Oil Co. LLC, CBD seeks the following discovery from Respondents Wynn Resorts Ltd., Wynn Las Vegas LLC, Caesars Entertainment Corp., Caesars Entertainment Operating Company, Inc., and Las Vegas Sands:

- Documents (e.g., SWIFT messages, bank account statements, cancelled checks) sufficient to show the source (e.g., name of sender, bank of sender, account number of sender) of any transfer or payment made by the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees to Respondents;

- Documents (e.g., SWIFT messages, bank account statements, cancelled checks) sufficient to show the destination (e.g., name of recipient, bank of recipient, account number of recipient) of any non-cash payment made by Respondents to the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees; and

- Documents sufficient to show any debt, if any, that the Respondents owe to the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees or funds that Respondents hold on behalf of the Al-Sari Individual Defendants, the Al-Sari Company Defendants, or the Al-Sari Transferees.

24. These CBD document requests are relevant and tailored to establish several critical points in the Sharjah Action.

    a. The document requests seek evidence that the Al-Sari Individual Defendants have acted intentionally, deliberately and/or wrongfully to frustrate CBD's efforts to debt and guarantee collection efforts. This may include, for example, documents showing transactions (i) without a reasonable business purpose, (ii) timed to frustrate CBD's debt enforcemnt efforts, (iii) that lack consideration, and (iv) that involve "roundtrip" transactions or other nominal "divestment" of assets as to which the Al-Sari Individual Defendants in fact retain the beneficial ownership and use of the assets.

b. The document requests seek evidence that the Al-Sari Individual Defendants have divested assets of FAL Oil Co. LLC in excess of FAL Oil Co. LLC's debt to CBD, as similarly, divested their own assets in excess of the guarantee obligations to CBD. This includes documents showing the amount and value of assets that the Al-Sari Individual Defendants and FAL Oil Co. LLC liquidated (e.g., real estate) or or squandered (e.g., gambling), and how the the Al-Sari Individual Defendants and FAL Oil Co. may purport to have "divested" those assets; and

c. The document requests seek evidence that although the Al-Sari Individual Defendants have nominally "divested" certain assets by transferring those assets to companies nominally "owned" and/or "controlled" by their relatives, in fact Al-Sari Defendants continue to own and control the purportedly "divested" assets. This can be shown with the same types of documents described above.

25. Without having received any documents from Respondents pursuant to the subpoenas sought to be served in this petition, CBD cannot assess at this time whether it will need testimony from Respondents' corporate representatives. Nevertheless, so as to not further burden the Court with multiple requests for additional testimony, CBD seeks, at this time, this Court's authorization to subpoena testimony from corporate representatives from Respondents addressing the topics as shown in the deposition subpoenas attached hereto as Exhibits 7 through 12.

**No Prior Application**

26. No previous application for the relief sought by this petition, or for any similar relief, has been made to this or any other Court by CBD. This application is made in good faith and to promote the ends of justice.

27. Like most Section 1782 applications, this application is made on an *ex parte* basis for the sake of speed and economy.

**Claim for Relief Sought**

28. The allegations of paragraphs 1-26 above are incorporated by reference as if fully set forth herein.

29. Section 1782(a) authorizes this Court to order a person within its jurisdiction "to give his testimony or statement or to produce a document . . . for use in a proceeding in a foreign or international tribunal." An order under § 1782(a) may be entered on the application of "any interested person." *Id*. The twin aims of § 1782(a) are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (internal quotation marks omitted).

30. The Sharjah Action is a "proceeding in a foreign or international tribunal" within the meaning of Section 1782(a). *See Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 41 (2d Cir. 1996) (interpreting "proceeding" to mean a "proceeding in which an adjudicative function is being exercised").

31. As well, CBD is contemplating adding additional claims for relief regarding additional fraudulent conveyances to the Sharjah Action; this too is within the scope of Section 1782. As the Supreme Court has held, "the 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'" *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).

32. CBD, as a litigant in the Sharjah Action is the paradigmatic "interested person" within the meaning of Section 1782(a). *Intel*, 542 U.S. at 257 ("'any interested person' is intended to include . . . litigants before foreign or international tribunals") (internal quotation marks and citations omitted).

33. This Court should exercise its discretion because the sought discovery cannot be ordered by the UAE court, because—insofar as CBD is aware—those courts do not have jurisdiction over Respondents. *See Intel*, 542 U.S. at 264 (concluding that whether the foreign tribunal has jurisdiction over the party from whom discovery is sought is a factor salient to the exercise of the Court's discretion under § 1782). As explained by the Supreme Court in *Intel*, non-participants in the foreign action—such as Respondents here—"may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*.

1  34. This Court should further exercise its discretion because this petition is not an
2  attempt to circumvent restrictions on discovery under UAE or other foreign countries' laws.
3  Indeed, CBD anticipates that the UAE courts will accept as evidence any discovery obtained
4  purusant to 28 U.S.C. § 1782.

5  35. The requested discovery is not unduly intrusive or burdensome, *see id.*, but rather
6  narrowly-tailored to ascertain facts directly relevant to establishing CBD's fraudulent
7  conveyanace claims against the Al-Sari Individual Defendants and the Al-Sari Company
8  Defendants.

9  WHEREFORE, petitioner CBD respectfully requests the entry of an *ex parte* order, in the
10 form to which this petition is annexed, authorizing the service on Respondents of subpoenas, in
11 substantially the form of the draft subpoenas annexed as Exhibits 1 through 12 to obtain evidence
12 for use in CBD's litigation in the UAE.

## MEMORANDUM OF LAW IN SUPPORT OF ITS PETITION FOR AN ORDER UNDER 28 U.S.C. § 1782(a)

As the Supreme Court explained in *Intel Corp. v. Advanced Micro Devices, Inc.*, 28 U.S.C. § 1782(a) ("Section 1782") "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." 542 U.S. 241, 247 (2004). Section 1782 authorizes an interested person, such as CBD, to apply directly to a U.S. district court for production of documents to be used in foreign proceedings.[1] Section 1782 (titled "Assistance to foreign and international tribunals and to litigants before such tribunals") provides in relevant part that "[t]he district court . . . may order

---

[1] "[Section] 1782 petitions are frequently reviewed on an *ex parte* basis. . . . The resulting order provides only that discovery is authorized, . . . so concerns regarding any unfairness of granting the petition *ex parte* are alleviated by the fact that the opposing party may raise objections and exercise its due process rights by challenging the discovery after it is issued." *Medeiros v. Int'l Game Tech.*, No. 2:16-CV-00877-JAD-NJK, 2016 WL 1611591, at *1 (D. Nev. Apr. 22, 2016) (granting Section 1782 petition); *see also In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,* 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that letters rogatory are enforceable through 28 U.S.C. § 1782 and "are customarily received and appropriate action taken with respect thereto *ex parte*.").

1  [respondent] to give his testimony or statement or to produce a document or other thing for use in
2  a proceeding in a foreign or international tribunal."

3  Because CBD's request meets the statutory requirements of Section 1782, and because the
4  discretionary factors identified by the Supreme Court in *Intel* also favor discovery, the Court
5  should grant petitioner's *ex parte* request for an order under Section 1782.

## FACTUAL BACKGROUND

7  Petitioner CBD has filed an action – asserting claims under foreign law that are in many
8  respects similar to a cause of action for fraudulent conveyance under Nevada law[2] – in the United
9  Arab Emirates ("UAE"). (Petition ¶ 1.) That action is *Commercial Bank of Dubai v. Al-Sari, et
10  al.*, Lawsuit No. 4733/2014, in the Sharjah Federal Court of the First Instance, Plenary
11  Commercial Department, UAE (the "Sharjah Action").

12  The defendants (and the "involved opponents," who are similar to defendants) in the
13  Sharjah Action are (i) Mohamed Abduallah Juma Al-Sari, (ii) Majid Abdullah Juma Al-Sari, (iii)
14  Abdullah Juma Majid Al-Sari (collectively, the "Al-Sari Individual Defendants"), and (i) Horizon
15  Energy Co. LLC, (ii) Sari Investments Company LLC, (iii) Alsoor Investments LLC, (iv) Alsoor
16  General Trading LLC, (v) Grand Valley General Trading LLC, and (vi) Investment Private Group
17  Ltd. (collectively, the "Al-Sari Company Defendants"). CBD needs to obtain evidence from
18  Respondents, who have their principal place of business in Nevada, to aid in the Sharjah Action.
19  (Petition ¶¶ 15-18, 23.)

20  CBD's allegatoins in the Sharjah Action can be briefly summarized. CBD extended a
21  loan in the amount of AED 472,676,345.71 (approximately $118 million) to FAL Oil Co. LLC
22  ("FAL Oil"), a UAE company. (Petition ¶ 4.) The loan was guaranteed by the Al-Sari Individual

---

[2] *See* NRS 112.180 ("Transfer made or obligation incurred with intent to defraud or without receiving reasonably equivalent value; determination of intent.") ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay or defraud any creditor of the debtor; or (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due.").

Defendants, who own FAL Oil, and also guaranteed by Investment Private Group Ltd. ("IPGL") (another company owned by the Al-Sari Individual Defendants). *Id.* FAL Oil defaulted on its loan to CBD, and the Al-Sari Individual Defendants and IPGL have defaulted on their gurantee obligations. *Id.* Moreover, the Al-Sari Individual Defendants have engaged in a campaign of ongoing fruadulent conveyances to avoid honoring FAL Oil's debt and their guarantees. *Id.* Consequently, in the Sharjah Action, CBD seeks to unwind the fraudulent conveyances that CBD has identified to date. *Id.*

## ARGUMENT

Under Section 1782, district courts have discretion over whether to order the production of evidence to benefit a foreign proceeding, as well as discretion over the extent of the evidence to be produced for the benefit of the foreign litigation.[3] "[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Judicial Assistance Pursuant to U.S.C. Sec. 1782 ex rel. Macquarie Bank Ltd.*, No. 2:14-CV-0797-GMN-NJK, 2014 WL 7706908, at *3 (D. Nev. June 4, 2014) (granting Section 1782 Petition) (internal citation omitted). "In pursuit of these twin goals, the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (internal citations and quotation marks omitted). "Indeed . . . 'allowance of liberal discovery seems entirely consistent with the twin aims of Section 1782 . . . .'" *In re O'Keeffe*, No. 2:14-CV-01518-RFB, 2015 WL 1308546, at *4 (D. Nev. Mar. 24, 2015) (quoting *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002)).

---

[3] "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing." 28 U.S.C. § 1782(a).

### I. CBD's Request Meets the Statutory Requirements of Section 1782.

Under Section 1782, an applicant such as CBD must meet three conditions for its application to be granted.

*First*, the person from whom discovery is sought must reside or be found in this district, the District of Nevada. 28 U.S.C. § 1782; *see also In re O'Keefe*, 2015 WL 1308546, at *2 (listing statutory elements). Here, CBD has alleged that, upon information and belief, all of the Respondents have their principal place of business within the District of Nevada. (Petition ¶¶ 15-18.)

*Second*, the discovery must be sought in connection with a "foreign proceeding." 28 U.S.C. § 1782. Here, the pending Sharjah Action, which is pending in a federal trial level court in Sharjah, UAE, is a "foreign proceeding" within the plain meaning of Section 1782. Further, as the Supreme Court held in *Intel*, it is perfectly appropriate to utilize Section 1782 discovery even when a foreign proceeding is not pending; Section 1782 discovery is available when a foreign proceeding is "within reasonable contemplation." 542 U.S. at 259. Accordingly, CBD may properly seek discovery not only to prove its pending claims in the Sharjah Action, but also to support additional fraudulent conveyance (or similar) claims in the Sharjah Action.

Moreover, the evidence sought is relevant to several issues being adjudicated in the Sharjah action, including whether the Al-Sari Individual Defendants have (1) acted intentionally, deliberately and/or wrongfully to frustrate CBD's efforts to collect the debt and guarantees that they and FAL Oil owe to CBD; (2) divested their own and/or FAL Oil's assets, in amounts exceeding their debt and guarantees to CBD; and (3) nominally "divested" certain assets by transferring them to companies nominally "owned" and/or "controlled" by their relatives, when in fact the Al-Sari Individual Defendants continue to own and control the purportedly "divested" assets.

The documents sought go directly to resolving the foregoing issues before the Sharjah Court. With regard to the issue of the Al-Sari Individual Defendants' intent to frustrate CBD's debt collection, the documents sought are relevant to show transactions (1) without a reasonable business purpose and/or that squander assets owed to CBD; (2) timed to frustrate CBD's debt

PARSONS
BEHLE &
LATIMER

15

99997.824\4816-1393-3643 v1

1  enforcement efforts; (3) that lack consideration; and (4) that involve "roundtrip" transactions or
2  other nominal "divestment" of assets as to which the Al-Sari Individual Defendants in fact retain
3  the beneficial ownership and use of the assets.  With regard to the issue of the Al-Sari Individual
4  Defendants' divestiture of assets exceeding the amount of FAL Oil's debt and their own
5  guarantees, the documents sought are relevant to show (1) the amount and value of assets that the
6  Al-Sari Individual Defendants liquidated (e.g., real estate, transfers of gambling winnings to third
7  parties) and/or squandered (e.g., gambling losses), and (2) how the Al-Sari Individual Defendants
8  and FAL Oil Co. may purport to have "divested" those assets.  These same documents also will
9  address a third disputed issue, *i.e.*, whether the Al-Sari Individual Defendants maintained
10 beneficial ownership of assets they nominally divested.

11 *Third*, CBD must be, and is, an "interested person" in the Sharjah Action because CBD is
12 the plaintiff in that action.  *Intel*, 542 U.S. at 256.

### II.   The Four Discretionary Factors Favor Granting CBD's Application

*Intel* held that, in cases where the Section 1782 statutory factors are met, four additional factors "bear consideration":  (1) whether the person from whom the evidence is sought is a party to the foreign proceeding and within the foreign tribunal's jurisdiction; (2) the nature of the foreign tribunal and its receptivity to United States judicial assistance; (3) whether the request is an attempt to circumvent the foreign proof-gathering restrictions or other policies of the foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. 542 U.S. at 264-265.  Here, all four factors favor granting CBD's request.

*First*, *Intel* held that "the need for § 1782(a) aid generally is [more] apparent . . . when evidence is sought from a nonparticipant in the [foreign action]" because the evidence may be outside the foreign tribunal's jurisdictional reach. 542 U.S. at 264.  Here, this factor weighs in favor of granting CBD's request.  The Respondents are not parties to the Sharjah Action, nor— insofar as CBD is aware—are Respondents, *i.e.*, casinos and a real estate settlement company based in Nevada, subject to the jurisdiction the UAE courts.

*Second*, "[p]arties that apply for discovery under § 1782 enjoy presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would

1 reject the evidence." *In re Meydan Grp. LLC*, No. CIV.A. 15-02141 JLL, 2015 WL 2453757, at
2 *4 (D.N.J. May 21, 2015) (granting Section 1782 Petition for US discovery in aid of proceedings
3 in United Arab Emirates).  "This Court must simply determine whether 'authoritative proof'
4 exists that the [foreign] Court 'would *reject* evidence obtained with the aid of section 1782.'" . . .
5 *[Absent]* 'authoritative proof' that the requested discovery would be unwelcome to the [foreign]
6 Court, there is no reason for this Court to exercise its discretion to deny [the Section 1782]
7 discovery applications."  *In re O'Keeffe*, 2015 WL 1308546, at *5 (citing *Euromepa S.A. v. R.
8 Esmerian, Inc.*, 51 F.3d 1095, 1099–1100 (2d Cir. 1995)).  Here, CBD anticipates that the Sharjah
9 Court would accept any evidence it obtains through Section 1782 discovery.  (Petition ¶ 6.)

10  *Third*, in this case there is no attempt to circumvent foreign proof gathering restrictions,
11 nor could there be, because the UAE court, insofar as CBD is aware, does not have jurisdiction
12 over the Respondents.  As the court explained in *In re Application of Chevron Corp.*, 709 F.
13 Supp. 2d 283 (S.D.N.Y. 2010), there can be no attempt to "circumvent the proof-gathering
14 restrictions of the [foreign] court," where "neither the [foreign] court nor the [foreign] arbitral
15 tribunal could compel [Respondent] to produce the [requested materials] because [Respondent] is
16 not a party to the foreign proceedings or subject to their writs."  *Id.* at 292-93, *aff'd sub
17 nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011).  *See also Medeiros v. Int'l Game
18 Tech.*, No. 2:16-CV-00877-JAD-NJK, 2016 WL 1611591, at *3 (D. Nev. Apr. 22, 2016)
19 (granting Section 1782 application where "there is no indication in the record currently that
20 allowing discovery through the instant proceeding would circumvent proof-gathering
21 restrictions.").

22  *Fourth*, the Request is not unduly burdensome or intrusive.  "The proper scope of
23 discovery arising out of a § 1782 application is generally determined by the Federal Rules of
24 Civil Procedure."  *Id.*; *see also In re Letters Rogatory From Tokyo Dist. Prosecutor's Office,* 16
25 F.3d 1016, 1019 (9th Cir.1994) (unless the court order otherwise specifies, the Federal Rules of
26 Civil Procedure apply).  Here, the discovery is well within the scope of discovery permissible
27 under the Federal Rules of Civil Procedure.  Indeed, discovery here is narrowly tailored to the
28 needs of the Sharjah Action and designed to minimize the burden on Respondents.  First, the

documents sought are related to a modest, enumerated list of specifically identified customers. Second, the requests to do not seek "all" documents "relating" or "concerning" certain subjects, but rather only documents "sufficient," to address CBD's needs (e.g., documents "sufficient to show the source" of payments from the Al-Sari Individual Debtors). Third, the documents are the type of materials (e.g., settlement records, incoming/outgoing payments from casinos) that businesses like the Respondents routinely keep and typically can access readily for their own business purposes. Fourth, no complex eDiscovery, such as email searches, use of Boolean operators (such as "and," "or," and "not"), or the like, should be required to locate responsive documents. Accordingly, this factor supports granting CBD's application. *See Medeiros*, 2016 WL 1611591, at *3 (granting Section 1782 petition, and holding that the fourth factor supporting doing so, where discovery sought was "within the scope of allowable discovery").

## **CONCLUSION**

For the reasons set forth herein, as well as those set forth in the Petition for an Order Under 28 U.S.C. § 1782(a), petitioner CLR hereby respectfully requests that the Court grant its petition for an *ex parte* order under 28 U.S.C. § 1782(a).

DATED: July 20, 2017.          PARSONS BEHLE & LATIMER

　　　　　　　　　　　　　　　　　　  /s/ Robert W. DeLong
　　　　　　　　　　　　　　　　Rew R. Goodenow, Esq., NV Bar No. 3722
　　　　　　　　　　　　　　　　Robert W. DeLong, Esq., NV Bar No. 10022
　　　　　　　　　　　　　　　　50 W. Liberty Street, Suite 750
　　　　　　　　　　　　　　　　Reno, Nevada 89501
　　　　　　　　　　　　　　　　Telephone: (775) 323-1601
　　　　　　　　　　　　　　　　Email: RGoodenow@parsonsbehle.com
　　　　　　　　　　　　　　　　RDeLong@parsonsbehle.com

　　　　　　　　　　　　　　　　Attorneys for Petitioner